```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
SYLVESTER TWINE, pro se,                                    :
                                                            :
                            Petitioner,                     :
                                                            :          MEMORANDUM AND ORDER
            -against-                                       :          12-CV-227 (DLI)
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                            Respondent.                     :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

Sylvester Twine ("Petitioner") was convicted, upon his plea of guilty, of conspiracy to distribute cocaine base ("crack") and powder cocaine. On January 19, 2011, this Court sentenced him to 105 months of incarceration, followed by five years of supervised release. (Minute Entry, Docket No. 08-cr-187,[1] Doc. Entry No. 412.) Petitioner appealed, and, on December 14, 2011, the Second Circuit Court of Appeals dismissed the appeal as barred by the waiver of appellate rights contained in Petitioner's plea agreement (the "appellate waiver"). (Mandate, Docket No. 08-cr-187, Doc. Entry No. 497.) On January 13, 2012, Petitioner, proceeding *pro se*,[2] filed the instant Petition challenging his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). (*See generally* Petition ("Pet."), Doc. Entry No. 1.) Petitioner contends that he received ineffective assistance of counsel during his plea allocution, sentencing,

---

[1] All references to "Docket No. 08-cr-187" are to the criminal case underlying the instant Petition.

[2] In reviewing the petition, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

and appeal, and that his guilty plea was not made knowingly and voluntarily. (*See* Pet.; Petitioner's Supplemental Amendment ("Supp. Pet."), Doc. Entry No. 3.) Petitioner seeks to be resentenced before a different judge, and specific performance of the plea agreement. (Pet. at 8.) In the alternative, Petitioner requests that the Court hold an evidentiary hearing. (*Id.*) For the reasons set forth below, Petitioner's Section 2255 Petition is denied in its entirety.

## BACKGROUND

**I.     Plea Agreement and Change of Plea Hearing**

On September 7, 2010, Petitioner pled guilty, pursuant to a written plea agreement, to conspiracy to distribute crack and powder cocaine in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii)(II) and 846, a lesser included offense of count one of the superseding indictment. (*See* Plea Tr., Docket No. 08-cr-187, Doc. Entry No. 435.) The plea agreement indicated, *inter alia*, that Petitioner would be subject to an estimated United States Sentencing Commission Guidelines Manual ("Guidelines") sentence range of 135 to 168 months' imprisonment, based upon an adjusted offense level of 30, and assuming Petitioner fell within Criminal History Category IV. (Plea Agreement ¶ 2, Doc. Entry No. 5-2.) The plea agreement stated further that Petitioner agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 168 months or below . . . without regard to the sentencing analysis used by the Court." (*Id.* ¶ 4.)[3]

In return, the government agreed that it would "take no position concerning where within

---

[3] Additionally, the plea agreement contained a stipulation that Petitioner would move to dismiss with prejudice a civil lawsuit he had filed in the United States District Court for the Southern District of New York, *Twine v. Four Unknown Federal Agents*, Docket No. 09-cv-7631 (RWS). (Plea Agreement ¶ 5.)

the Guidelines range determined by the Court the sentence should fall," unless "information relevant to sentencing" became known to the government after the date of the plea agreement. (*Id.* ¶ 6.) The plea agreement provided that the government "will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence." (*Id.* ¶ 2.) The plea agreement also provided that the estimated Guidelines range contained in the agreement was not binding on the government, the Probation Department ("Probation"), or the Court, and Petitioner would not be entitled to withdraw his guilty plea if the Court's determination of the Guidelines range was different than that provided by the plea agreement. (*Id.* ¶ 3.)

During the change of plea hearing, Petitioner, who had been placed under oath (Plea Tr. at 3), confirmed that he had read and reviewed the plea agreement with his attorney and that he understood all of its terms. (Plea Tr. at 15-16.) Petitioner further stated he understood that he was waiving his right to appeal or collaterally attack his sentence as long as the sentence imposed was 168 months or below. (*Id.* at 15.) The Court asked Petitioner whether he understood that, by pleading guilty, he was waiving his right to go to trial and make the government meet its burden of proving his guilt beyond a reasonable doubt. (*Id.* at 11-12.) Petitioner indicated that he understood. (*Id.*) Moreover, when the Court advised Petitioner that the government, Probation, and the Court were not bound by the Guidelines range estimate in the plea agreement and that he would not be permitted to withdraw his plea if the estimate was incorrect, Petitioner affirmed that he understood. (*Id.* at 26-27.)

When questioned by the Court about his attorney, Michael H. Sporn, Esq., Petitioner confirmed that he had discussed the indictment and the charge to which he would be pleading

3

guilty with his attorney, and was fully satisfied with the representation and advice given to him by counsel. (*Id.* at 8.) Petitioner also indicated that no one had made any promises to get him to plead guilty, other than the promises contained in the written plea agreement, and that no one had made any promise as to what his final sentence would be. (*Id.* at 28.) In light of Petitioner's responses, the Court found that Petitioner was acting voluntarily, understood his rights and the consequences of his plea, and that there was a factual basis for the guilty plea. (*Id*. at 30.) Accordingly, the Court accepted Petitioner's plea of guilty to the lesser included offense under count one of the superseding indictment. (*Id.*)

## II.     Sentencing and Direct Appeal

On December 7, 2010, Probation issued the Presentence Investigation Report ("PSR"), in which Probation calculated a Guidelines sentencing range of 84 to 105 months, based on an adjusted offense level of 25 and Criminal History Category IV. The government indicated that it had no objections to the PSR. (Gov.'s Let., Docket No. 08-cr-187, Doc. Entry No. 402.)

Although Petitioner did not object to the Guidelines range as calculated by Probation, Petitioner's attorney advocated for the imposition of a below-Guidelines sentence of 70 months by letter dated January 4, 2011. (Def.'s Sentencing Mem., Docket No. 08-cr-187, Doc. Entry No. 404.) Mr. Sporn argued that the Court should consider Petitioner's family situation and apply a one-to-one powder cocaine to crack ratio. (*Id.*) In response, the government argued that a sentence within the Guidelines range was appropriate because: 1) Petitioner's family circumstances were not sufficiently extraordinary to justify a downward departure, and 2) the "present ratio in the Guidelines provide[d] the Court with the latitude to fashion an appropriate and fair sentence." (Gov.'s Sentencing Mem., Docket No. 08-cr-187, Doc. Entry No. 407.)[4] The

---

[4] The 2010 United States Sentencing Commission Guidelines Manual ("2010 Manual") that was in effect at the time of sentencing here was used in calculating the applicable sentencing guidelines range. The 2010 Manual

4

government also referred to Petitioner's extensive criminal history in responding to Petitioner's arguments that Petitioner's poverty and family circumstances warranted a below-Guidelines sentence. (*Id.*) In a letter reply, Mr. Sporn argued, *inter alia*, that the cases relied on by the government for the proposition that Petitioner had not proven extraordinary circumstances pre-dated *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Guidelines advisory rather than mandatory, and the Court could consider Petitioner's family circumstances under 18 U.S.C. § 3553(a), even if they were not "extraordinary." (Def.'s Sentencing Reply, Docket No. 08-cr-187, Doc. Entry No. 411.)

At the sentencing hearing, the parties reiterated the arguments presented in their respective written submissions to the Court. (Sentencing Tr. at 9-18, Docket No. 08-cr-187, Doc. Entry No. 502.) The Court concurred with Mr. Sporn that, "in the post-*Booker* world, . . . any one particular factor does not need to rise to the extraordinary circumstances standard that would have applied traditionally under a departure analysis." (*Id.* at 20-21.) The Court also acknowledged that it had applied a one-to-one powder cocaine to crack ratio in other cases, but found that a non-Guidelines sentence was inappropriate under the circumstances of Petitioner's case. (*Id.* at 28.) Based on its consideration of the advisory Guidelines, the 3553(a) factors, and all of the facts and circumstances of this case, the Court sentenced Petitioner to 105 months of imprisonment and five years of supervised release. (*Id.* at 28, 31-32.) On December 14, 2011, the Second Circuit Court of Appeals dismissed Petitioner's appeal of this Court's judgment as barred by the waiver of appellate rights contained in Petitioner's plea agreement. (*See* Mandate.)

---

incorporated the eighteen-to-one crack to powder cocaine ratio contained in the Fair Sentencing Act of 2010, Pub.L. No. 111–220, § 2, 124 Stat. 2372 (amending 21 U.S.C. § 841), as Congress had determined that the 100-to-one crack to powder cocaine ratio contained in the prior drug sentencing statutes had caused unjust results. *See also United States v. Brooks*, 732 F.3d 148, 149-50 (2d Cir. 2013) (noting that the Fair Sentencing Act of 2010 authorized the Sentencing Commission to reduce the base offense levels for certain crack cocaine offenses).

**III.     The Petition**

Petitioner timely filed this Section 2255 Petition contending that he received ineffective assistance of counsel because his attorney: 1) failed to inform Petitioner, in connection with his guilty plea, that drug quantity was an element of the crime that the government would have to prove beyond a reasonable doubt at trial (Pet. at 7-8); 2) told Petitioner that he should plead guilty because the Court would apply a one-to-one powder cocaine to crack ratio at sentencing (Supp. Pet. at 4); 3) conceded, in connection with sentencing, that Petitioner's personal and family circumstances had to be extraordinary to justify a downward departure (Supp. Pet. at 5-6); 4) failed to argue, on direct appeal, that the government had breached the plea agreement (Pet. at 2-3); 5) failed to argue, on direct appeal, that this Court violated Petitioner's constitutional rights by declining to apply a one-to-one powder cocaine to crack ratio at sentencing (Supp. Pet. at 1-2); and 6) failed to notify the appeals court that he had been relieved as counsel. (Pet. at 3-4.) The government opposes the Petition on the grounds that: 1) the Petition is barred by the appellate waiver, which was entered into knowingly and voluntarily; 2) Mr. Sporn's representation of Petitioner was not ineffective; and 3) the government did not breach the plea agreement. (Gov.'s Mem., Doc. Entry No. 5.)

**DISCUSSION**

**I.     Direct Appeal and Waiver of Appeal**

As an initial matter, the Second Circuit already has held that Petitioner waived his appellate rights by virtue of the plea agreement into which he entered.[5] (*See* Mandate.) The

---

[5] As noted above, Petitioner agreed "not to file an appeal or otherwise challenge . . . the conviction or sentence in the event that the Court imposes a term of imprisonment of 168 months or below . . . without regard to the sentencing analysis used by the Court" as part of the plea agreement. (Plea Agreement ¶ 4.) This Court imposed a sentence of 105 months, well below the maximum sentence contemplated by the appellate waiver.

6

government argues that the Petition should be denied on this ground alone.  (Gov.'s Mem. at 2-4.)  *See United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (finding that a Section 2255 petition cannot be used to "relitigate questions which were raised and considered on direct appeal").  As discussed in more detail below, because the Circuit Court did not have before it a challenge to the appellate waiver based on the ground of ineffective assistance of counsel, this Court will consider the merits of Petitioner's claim.  However, for the reasons also set forth below, the Court finds the waiver to be valid as it was knowingly, intelligently, and voluntarily made by the Petitioner.  Accordingly, Petitioner was barred from filing this Petition.

Waivers of the right to appeal or to collaterally challenge a sentence are presumptively enforceable.  *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011); *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000).  However, waivers may be unenforceable in narrowly circumscribed situations, such as where "the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence."  *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010) (citing *Gomez-Perez*, 215 F.3d at 319)).

Petitioner's first two ineffective assistance of counsel claims, which were not before the Circuit Court, merit this Court's review, because they "reflect on the voluntary nature of his plea." *United States v. Peele*, 500 F. App'x 33, 35 (2d Cir. 2012) (summary order) (citing *Parisi v. United States*, 529 F.3d 134, 138-39 (2d Cir. 2008)); *see also Massaro v. United States*, 538 U.S. 500, 509 (2003) (holding that the failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later Section 2255 Petition);

7

*United States v. Riggi*, 649 F.3d 143, 150 (2d Cir. 2011) (finding that "a claim based on ineffective assistance of counsel . . . can survive an appeal waiver where the claim concerns the advice [the defendant] received from counsel").

Similarly, Petitioner's claim that counsel was ineffective for failing to argue on direct appeal that the government breached the plea agreement is properly before this Court. *See United States v. Mammedov*, 304 F. App'x 922, 924 (2d Cir. 2008) (holding that "[e]ven where . . . a defendant waives his right of appeal . . . the defendant may appeal his sentence if he can show that the government has breached its contractual obligations"); *Garafola v. United States*, 909 F. Supp. 2d 313, 324 (S.D.N.Y. 2012) (finding that a breach of a plea agreement by the government can be grounds for setting aside a waiver provision) (citing *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997)).

Because Petitioner's claims of ineffective assistance of counsel before the trial court impact on the issue of Petitioner's appellate waiver's validity and the government's alleged breach of the plea agreement would nullify the appellate waiver, these issues are addressed below. For the reasons set forth below, the Court finds that Petitioner's appellate waiver was valid and, as such, Petitioner was precluded from filing this Section 2255 Petition. Moreover, notwithstanding the valid waiver, none of his claims, including the government's alleged breach of the plea agreement, have merit. Accordingly, the Petition is denied in its entirety.

**II.     Effectiveness of Counsel**

    A.     *Legal Standard*

The court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . .

8

under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the second prong of the *Strickland* test is satisfied upon a showing by the defendant "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

      B.    *Drug Quantity*

Petitioner claims that his counsel was ineffective and that his plea was not made knowingly and voluntarily because he was never advised that he was waiving his right to have a jury determine the drug quantity attributable to him beyond a reasonable doubt. (Pet. at 7-8.)

Petitioner's claim is belied by the record. First, Petitioner stipulated in the plea agreement that he was responsible for at least 150 grams of crack and at least 500 grams of powder cocaine and that he "waive[d] any right to a jury trial and sentencing hearing in connection with such issue." (Plea Agreement ¶ 2.) During the plea allocution, the Court read the charge to which Petitioner was pleading guilty, and noted that it related to "a lesser amount of cocaine and crack cocaine" than the charge set forth in the indictment. (Plea Tr. at 8-9.) Petitioner affirmed, under oath, that he understood that he was giving up his right to challenge the drug quantity set forth in the laboratory reports prepared on behalf of the government and to a jury trial at which the government would have to meet its burden of proving Petitioner's guilt beyond a reasonable doubt. (*Id.* at 11-12, 14-15.) Based on the foregoing, there was no need for a jury trial to determine the quantity of drugs for which Petitioner would be held accountable.

9

*See United States v. Ballesteros*, 2007 WL 778051, at *4 (S.D.N.Y. Mar. 16, 2007) (rejecting petitioner's claim that his plea was made unknowingly and involuntarily because he was never advised that he was waiving his right to have a jury determine the drug quantity attributable to him beyond a reasonable doubt); *see also United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (recognizing that plea allocution testimony "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made").

The record does not a support a finding that Mr. Sporn's performance was inadequate, and, in any event, Petitioner was advised by the Court of the rights he was giving up by pleading guilty, which he stated, under oath, he understood.  Petitioner, therefore, has failed to show that, but for counsel's alleged misrepresentations or omissions, Petitioner would not have pleaded guilty.  Accordingly, Petitioner's claim of ineffective assistance counsel on the basis of counsel's alleged failure to advise him that he was waiving his right to a jury determination of the drug quantity attributable to him is denied.

      C.    *One-to-One Powder Cocaine to Crack Ratio*

Petitioner's ineffective assistance claim based on Mr. Sporn's alleged representation that the Court would apply a one-to-one powder cocaine to crack ratio is also unavailing.

At the outset, Petitioner's current self-serving claim that Mr. Sporn misled him contradicts Petitioner's prior sworn statements at the guilty plea allocution confirming that: 1) he was fully satisfied with the representation and advice given to him by Mr. Sporn; 2) no one had threatened or forced him to plead guilty; and 3) no one had made any promises to Petitioner either to induce him to plead guilty or as to what his final sentence would be.  (Plea Tr. at 8, 28.)

10

*See United States v. Juncal*, 245 F.3d at 171.[6]

In any event, the Court need not decide whether Mr. Sporn made inaccurate predictions concerning Petitioner's sentence because where, as here, Petitioner's "specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether [Petitioner] was *aware of actual sentencing possibilities*, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (emphasis added and citation omitted). Accordingly, even assuming, *arguendo*, that Mr. Sporn had given Petitioner erroneous advice, Petitioner did not suffer any prejudice – as required by the second prong of the *Strickland* standard – because he was made aware by the Court at the change of plea hearing, where he was represented by counsel, that, *inter alia*: 1) the charge to which Petitioner was pleading guilty carried a mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years' imprisonment (Plea Tr. at 18); 2) the government and defense counsel's estimate of the Guidelines range was 121 to 151 months (Plea Tr. at 25-26); 3) no one could state with certainty "what the Guidelines will be . . . or whether the Court will impose a nonguidelines sentence;" 4) the Court, Probation, and the government were not bound by the Guidelines estimate; and 5) Petitioner would not be permitted to withdraw his guilty plea if the Guidelines estimate was incorrect. (Plea Tr. at 25-27.) *See, e.g.*, *Arteca,* 411 F.3d at 320; *Wang v. United States*, 2011 WL 73327, at *5 (E.D.N.Y. Jan. 10, 2011), *aff'd*, 458 F. App'x 44 (2d Cir. 2012) (finding that the prejudice prong of the *Strickland* standard could not be established where the

---

[6] Moreover, nothing in the record suggests that Petitioner lacked the requisite mental capacity to enter a knowing and voluntary plea. (*See* Plea Tr. at 5-7.) Indeed, a review of Defendant's *pro se* filings during the pendency of the case demonstrates that Defendant is an intelligent and articulate individual with a substantial grasp of legal principles. (*See* Sentencing Tr. at 13.) Also of note, Petitioner was fully capable of alerting the Court as to any concerns he may have had regarding Mr. Sporn's representation of him, as he previously had asked the Court to relieve his first attorney for ineffectiveness. (*See* Docket No. 08-cr-187, Doc. Entry Nos. 141, 238.)

11

court advised the defendant of the consequences of his plea).

In sum, under these circumstances, Petitioner has not shown that he would not have pled guilty and would have insisted on going to trial but for Mr. Sporn's purported misrepresentations. Thus, the second prong of the *Strickland* test has not been satisfied. Since neither of Petitioner's claims regarding the voluntary nature of his plea are meritorious, Petitioner also has failed to show that his guilty plea was not made knowingly and voluntarily. As such, the appellate waiver is valid and Petitioner is barred from bringing this Petition.

        D.      *Government's Alleged Breach of the Plea Agreement*

Petitioner also contends that his counsel was ineffective for failing to argue, on direct appeal, that the government breached the plea agreement by engaging in sentencing advocacy. (Pet. at 4-7.) Specifically, Petitioner asserts that the government breached its plea agreement obligation by attacking Petitioner's character and discussing his criminal history in the government's January 11, 2011 letter to the Court (the "Letter"), and at the sentencing hearing. (*Id.*) Petitioner's arguments are meritless.

It is well settled in the Second Circuit that plea agreements "are construed according to contract law principles[.]" *United States v. Green*, 595 F.3d 432, 438 (2d Cir. 2010). Further, plea agreements are construed against the government, and a reviewing court must not hesitate to examine the conduct of the government to ensure it "comports with the highest standard of fairness." *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) (citing *United States v. Lawlor*, 168 F.3d 633, 637 (2d Cir. 1999)). In determining whether a plea agreement has been breached, courts look to "what the parties reasonably understood to be the terms of the agreement." *Id.* (citing *Lawlor*, 168 F.3d at 636) (internal quotation marks omitted). Where, as here, a party claims that the government breached the plea agreement "by making allegedly

impermissible comments to the sentencing court, [courts] consider the statements in context to determine if the government's commentary reasonably appears to seek to influence the court in a manner incompatible with the agreement." *United States v. Navarro*, 312 F. App'x 378, 379 (2d Cir. 2009) (internal quotation marks omitted).

The plea agreement obligated the government to "take no position concerning where within the Guidelines range determined by the Court the sentence should fall," unless "information relevant to sentencing" became known to the government after the date of the plea agreement. (Plea Agreement ¶ 6.) The plea agreement also expressly permitted the government to "advise the Court . . . of information relevant to sentencing, including activity engaged in by the defendant. . . ." (*Id.* ¶ 2.) The government complied with its obligations under the plea agreement in both its Letter and at sentencing.

First, the government's Letter was written in response to Mr. Sporn's letter advocating for a below-Guidelines sentence and in support of its position that "a sentence within the [Guidelines range] is appropriate." (Gov.'s Sentencing Mem. at 1.) The government did not advocate for any particular sentence, but instead responded that Petitioner's family and personal circumstances did not warrant a downward departure from the Guidelines range. (*Id.*) The government discussed Petitioner's "important role" in the conspiracy for which he was convicted; however, it did so in the context of arguing that, because Petitioner had received "neither a leadership enhancement nor a minor role reduction in his base offense level," his role in the conspiracy was properly reflected by the Guidelines. (*Id.*) Similarly, the government summarized Petitioner's criminal history – information already contained in the PSR – in order to argue that a Guidelines sentence was appropriate because his family and personal circumstances did not "excuse[] or explain[]" his criminal behavior. (*Id.* at 3-4.) Such "mild,

13

non-provocative, merely informative, and substantially justified" comments do not constitute a breach of the agreement. *United States v. Amico*, 416 F.3d 163, 168 (2d Cir. 2005). While the government's comment that "defendant is not a sympathetic individual" could be considered troublesome in isolation, the Letter, when read in context, was advocacy for a sentence within the Guidelines range determined by the Court, in full conformity with the plea agreement. Accordingly, the Letter does not rise to the level of inappropriate sentencing advocacy.

Petitioner claims also that the government violated its agreement by "ask[ing] the Court to adopt a particular view of the Guidelines" at sentencing. (Pet. at 2.) At sentencing, defense counsel requested that the Court impose a sentence below the applicable Guidelines range, urging that a below-Guidelines sentence would still "send[] a message that the offense was serious and . . . have the appropriate deterrent effect." (Sentencing Tr. at 9-12.) In response, the government argued that the Petitioner's "disturbing" criminal history demonstrated that he would not be deterred from committing future crimes by a below-Guidelines sentence. (*Id.* at 15-17.) The government indicated that its position was that "a guideline sentence is really the only appropriate sentence here [because a] sentence below the guidelines . . . does not reflect the seriousness of the defendant's crime and is not sufficient to meet the goals of sentencing." (*Id.* at 17.) The government's comments about the Petitioner's criminal history were all made in response to defense counsel's arguments in support of his request for a below-Guidelines sentence. Taken in context, the Court concludes the government's statements did not rise to the level of unjustifiable advocacy, but remained within the boundary of information relevant to sentencing.

Based on the foregoing analysis, the Court finds that the government did not breach the plea agreement in any way and, thus, did not invalidate the appellate waiver. If defense counsel

14

had made such an argument on direct appeal, it very likely would have been rejected. As such, Mr. Sporn's failure to argue that the government breached the plea agreement does not constitute ineffective assistance of counsel. *See United States v. Regalado*, 518 F.3d 143, 150 (2d Cir. 2008) (finding that "failure to make a meritless argument does not amount to ineffective assistance"). Accordingly, Petitioner's ineffective assistance of counsel claim on the basis of counsel's alleged failure to argue that the government breached the plea agreement is denied.

E. *Petitioner's Remaining Arguments*

Petitioner's remaining ineffective assistance of counsel arguments fail because they are barred by the appellate waiver. Even if they were not barred, they would fail on the merits. First, Petitioner's claim that Mr. Sporn conceded that Petitioner's family circumstances had to be "extraordinary" to justify a downward departure is contradicted by the record. Mr. Sporn conceded only that the pre-*Booker* cases cited by the government in its sentencing memorandum established such a standard. (Def.'s Sentencing Reply at 1.) In the paragraph directly after the one cited by Petitioner, Mr. Sporn noted that "[b]efore *Booker*, courts could not consider family circumstances unless extraordinary. Now they must." (*Id.*) The record clearly shows that Mr. Sporn zealously advocated for a below-Guidelines sentence based in part on Petitioner's family circumstances. Thus, Petitioner has failed to show that counsel's performance was inadequate under the first prong of the *Strickland* standard.

Second, Petitioner maintains that his attorney was ineffective for failing to argue on direct appeal that the Court violated Petitioner's constitutional rights by declining to apply a one-to-one powder cocaine to crack ratio at sentencing. (Supp. Pet. at 1-3.) However, Mr. Sporn did make this argument on appeal, and it was rejected by the Circuit Court. Specifically, Mr. Sporn submitted a declaration in connection with Petitioner's direct appeal in which he argued that "the

15

District Court treated Mr. Twine differently from [Petitioner's co-defendants]" by applying a one-to-one powder cocaine to crack ratio in sentencing his co-defendants, but declining to do so in Petitioner's case. (Sporn Decl. ¶ 5-6, Doc. Entry No. 1.) Thus, the record again reflects Mr. Sporn's zealous and competent advocacy on behalf of the Petitioner, and Petitioner has failed to show that his attorney's representation fell below an objective standard of reasonableness.

Finally, Petitioner complains that Mr. Sporn "failed to give the Appeals Court notice that he was relieved as counsel." (Pet. at 3-4.) According to Petitioner, Mr. Sporn was relieved as counsel for Petitioner at a violation of supervised release hearing related to a previous conviction, and another attorney was appointed for that proceeding.[7] (*Id.* at 3.) It is unclear what bearing, if any, this fact would have had on Petitioner's appeal in the underlying criminal case, particularly since Mr. Sporn was never relieved in that matter. Thus, Petitioner has failed to establish that Mr. Sporn's alleged failure to inform the Circuit Court that he had been relieved in a violation of supervised release matter, unrelated to his appeal, falls below an objective standard of reasonableness or that it caused Petitioner to suffer any prejudice. Accordingly, Petitioner's remaining ineffective assistance of counsel claims are rejected.

In sum, Petitioner has failed to show any basis for Section 2255 relief, no hearing is necessary, and the Petition is denied in its entirety.

---

[7] Petitioner was on federal supervised release in this district for a prior conviction when arrested for the offense charged in the underlying criminal case. (*See United States v. Twine*, Docket No. 07-cr-463 (FB)). On September 13, 2011, the Honorable Frederic Block, Senior United States District Judge of this Court, relieved Mr. Sporn as counsel for Petitioner in connection with a violation of supervised release hearing in connection with the prior conviction. (*See id.*)

## CONCLUSION

For the reasons set forth above, Petitioner's request for relief pursuant to Section 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
January 10, 2014

/s/
DORA L. IRIZARRY
United States District Judge